PER CURIAM.
We have for review the recommendation of the Judicial Qualifications Commission (JQC) that Judge Bonnie S. Newton[1] be disciplined. We have jurisdiction. See art. V, § 12, Fla. Const. The JQC and Judge Newton have stipulated to recom *108 mending a public reprimand for Judge Newton’s misconduct.
The Investigative Panel’s Findings of Fact and Recommendation of Discipline were as follows:
1. Judge Newton was routinely abusive, demeaning, and sarcastic to litigants, witnesses and attorneys. In 1995, Judge Newton was counseled by a member of the Judicial Qualifications Commission to correct this abusive behavior. Despite this counseling, Judge Newton continued to be abrupt, sarcastic, rude, demeaning, and even vengeful to those who appeared before her.
2. In December 1996, Judge Newton’s former judicial assistant, Karen Sella, began working for Attorney Diana Beard. After this time, Judge Newton became abusive and sarcastic toward Attorney Beard to the extent that Attorney Beard requested a blanket recusal of Judge Newton from all of her cases. Before Ms. Sella began working for Attorney Beard, Judge Newton was cordial to her at Bar functions and Family Law related meetings. After, Judge Newton refused to acknowledge or speak to Attorney Beard outside the courtroom.
3. In August of 1997, Judge Newton became angry because Attorney Liz Richards had filed a motion for recusal disclosing that Judge Newton had ordered an in-chambers settlement conference. Thereafter, Judge Newton became abusive to Attorney Richards in court proceedings to the point that one of Richards’ clients remarked: “My God, that judge hates you.” When Richards approached Judge Newton to clear the air, Judge Newton stated to her that she had made a “very serious error in judgment” and that “Judge Newton could not trust her anymore,” or words to that effect. Judge Newton further told Attorney Richards that “judges can make or break attorneys” and that “clients come and go, but you have to work with the same judges year in and year out. You better learn who your friends are.” When Richards asked Judge Newton if Judge Newton intended to allow or cause this incident to have a lasting effect on her career, Judge Newton stated words to the effect that: “Things have a way of getting out.” Afterwards, Judge Newton refused to acknowledge or speak to Attorney Richards outside the courtroom.
4. In pretrial conferences where no court reporter was present, Judge Newton was routinely rude and sarcastic to attorneys who appeared before her.
5. Approximately five years ago, Attorney Catherine M. Catlin appeared before Judge Newton at a pretrial hearing wearing pants. After the hearing, Judge Newton called Attorney Catlin to the bench and admonished her not to wear pants in Judge Newton’s courtroom. Attorney Catlin advised Judge Newton that she had a leg deformity and that it was inappropriate to comment on an attorney’s dress pursuant to the Supreme Court/Florida Bar Gender Bias Study and Recommendations. After this incident, Judge Newton was rude and abusive to Attorney Catlin and her clients. As a result of Judge Newton’s conduct and attitude toward Attorney Catlin, Attorney Catlin routinely advised her clients that they should consider retaining another lawyer if Judge Newton was assigned to the client’s case.
6. In In re: Marriage of Berg v. Berg, circuit civil no. 95-4655-FD-024, Judge Newton was abusive, intimidating, and demeaning to witnesses and parties, including sarcastically calling witness Mary Robinson a high school “dropout” when in fact she had received her GED.
7. In In re: Marriage of Anderson v. Balas, circuit civil no. 86-001678-FD-24, Judge Newton was abusive, demeaning and intimidating to witnesses and parties. This included telling the former wife on more than one occasion, who was appealing pro se, that “she’d *109 better be prepared, because she was not going to get by on her good looks.” When the former wife stated that she was not an attorney but was trying the best she could, Judge Newton stated: “That is not good enough” or words to that effect.
8. In In re: Interest of Minor Child, circuit civil no. 1368988, petition no. 93006870-FD-024, Judge Newton was abusive, demeaning, and intimidating to witnesses and parties. This included making inappropriate and sarcastic facial expressions and gestures and inappropriate comments. In one such comment, Judge Newton admonished a court-appointed guardian ad litem, who was responding to a question asked by Judge Newton: “Don’t you ever interrupt me while I am speaking.”
9. In In re: Custody of Minor Children, circuit civil no. 98-2849-FD-24, Judge Newton was abusive, demeaning, and intimidating to witnesses, parties and attorneys. This included starting a criminal contempt hearing 30 minutes before its noticed starting time. At this hearing, Judge Newton had the wife appear pro se notwithstanding that Judge Newton was aware that she was represented by Attorney Karen McHugh. When Ms. McHugh appeared 10 minutes before the hearing was noticed to begin, Judge Newton had already begun to announce her ruling from the bench. Judge Newton refused to hear Ms. McHugh even though she requested to be heard. When Ms. McHugh inquired as to the basis of Judge Newton[’s] ruling, Judge Newton sarcastically responded: ‘Why don’t you step outside and ask opposing counsel” or words to that effect.
10. While sitting as a judge in Rhodes v. Rhodes, circuit civil no. 95-9015-FD-24, Judge Newton sua sponte ordered the attorneys for both parties to an “unofficial” meeting in her chambers. No formal notice of the meeting was made in the clerk’s records and Judge Newton instructed the attorneys not to bring or inform their clients of the meeting.
11. At this meeting, Judge Newton demanded that the attorneys settle the case on terms which Judge Newton outlined and asked them to “sell” the settlement to their clients. When the attorney for the wife, Liz Richards, refused, Judge Newton became angry and slammed papers on her desk. Judge Newton then ordered the parties not to discuss the meeting with their clients or even to disclose the' fact that the meeting took place. Judge Newton also ordered the attorneys to hand Judge Newton their notes. The attorney for the husband complied and Judge Newton destroyed his notes. The attorney for the wife refused. Judge Newton then stated words to the effect: “Ms. Richards, you don’t understand the way it is going to be. I am ordering you to give me your notes.” Judge Newton then destroyed these notes.
12. After the meeting, Attorney Richards moved to have Judge Newton recused from the case. After that time, Judge Newton became abusive to Attorney Richards and her clients in other cases.
The panel recommended that Judge Newton be disciplined by a public reprimand. Pertinent factors in selecting this discipline include Judge Newton’s agreement to plead guilty to all of the JQC’s formal charges and the fact that Judge Newton was defeated in the last election and is therefore no longer presiding on the bench. We agree with the panel’s recommendation. Accordingly, the publication of this opinion serves as the public reprimand[2] for former Judge Bonnie S. Newton.
It is so ordered.
*110 HARDING, C.J., and SHAW, WELLS, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.

. At the time these proceedings began, Bonnie S. Newton was a circuit court judge in the Sixth Judicial Circuit. She subsequently lost her bid for reelection and is not presently a judge in this state.

 Because former Judge Bonnie S. Newton is no longer a member of the judiciary, we find it unnecessary to issue an in-person public *110 reprimand pursuant to our policy articulated in In re Frank, 753 So.2d 1228 (Fla.2000).